

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

June 19, 1958

Mr. Arthur B. Scharlach
Executive Secretary
Veterans Land Board
Austin, Texas

Opinion No. WW-457

Re: Handling of Proceeds
Received from Land
After Forfeiture.

Dear Mr. Scharlach:

You have requested an opinion on the above matter based on facts set forth in your letter as follows:

"Pursuant to the provisions of the Veterans' Land Act, the right of forfeiture by the Board has been exercised against the contracts of sale and purchase of veterans whose interest and principal have become delinquent. There have been occasions when proceeds, such as rentals from growing crops and Soil Bank payments, have been received in the Veterans' Land Board from a tract of land upon which the original veteran purchaser's contract has been forfeited.

"The basis for our opinion request is a forfeited tract of land which is pending reinstatement and transfer at the present time. The contract on this tract of land was forfeited on November 15, 1956; prior to the time when the Board was to order the resale of this tract, an application for reinstatement and transfer were received in this office. The proposed transferee has deposited with this office an amount equal to the delinquent interest and principal and the penal interest, and this amount has been placed in a suspense account awaiting approval of the reinstatement and transfer. Also, in another suspense account, in the name of this same forfeited contract, we have on deposit an amount of $560.22, received from the Commodity Credit Corporation, after forfeiture, and being the amount earned by this tract as a participant in the Conservation Reserve Soil Bank program.

"A brief history of the above-described contract is set out below:

"Effective Date of Veteran's
    Contract . . . . . . . . . . March 23, 1953
Date of Application to
    participate in Conser-
    vation Reserve Soil Bank
    Program . . . . . . . . . . Nov.   2, 1956
Approval of Soil Bank Con-
    tract by A.S.C. Committee-
    La Salle County . . . . . . Nov.   9, 1956
Date of Forfeiture of Con-
    tract . . . . . . . . . . . Nov.  15, 1956
Date of Application for
    Transfer . . . . . . . . . . Sept. 30, 1957
Date of Deposit for Rein-
    statement of Contract . . . Nov.   2, 1957
Date of Deposit from Com-
    modity Credit Corporation. . Nov.  12, 1957"

Based on the above facts, you request our opinion on the following questions:

"1. Can the money received under a Soil Bank contract or from the sale of growing crops be applied against the amount of the delinquency for the purpose of reinstatement?

"2. If the account should be fully reinstated, can the money so received be applied against the unpaid principal balance?

"3. If the answers to the above two questions are in the negative, then where should this money be applied?"

As the basis for your request is a Soil Bank payment, we shall limit this opinion accordingly and omit any discussion of crop rentals. Since receipt of the above inquiry, we have been furnished with the following additional information in connection with this tract of land:

(1) The contract has been fully reinstated and completely transferred to the transferee.

(2) The transferee has executed a new Soil Bank Conservation Reserve contract which continues in effect the original Soil Bank contract.

(3) Your office has received a memorandum from the Office of the General Counsel, Soil Bank Division, Department of Agriculture in Washington, D.C., which answers several questions relating to participation in the Conservation Reserve Program by veterans purchasing land from the Board under the Veterans Land Program.

From an examination of the memorandum of the Soil Bank Division General Counsel, and the terms and conditions in the Soil Bank Conservation Reserve contract, it is apparent that the obligations and rights, including the right to Soil Bank payments, of participants in the Conservation Reserve Program are governed by the contract and the provisions of the regulations issued by the Secretary of Agriculture governing the Conservation Reserve Program, which regulations are made a part of the Conservation Reserve contract. It is specifically noted that Part III of the Soil Bank Conservation Reserve contract specifies to whom, and in what percentage, annual payments thereunder will be made. Additionally, in order to secure the annual payment, the parties specified in the contract as entitled to payment must sign an application therefor, certifying that for the program year indicated they have complied with the Conservation Reserve Program requirements and that the payment is due.

Under the provisions of the Veterans Land Act, Article 5421m, V.C.S., when a tract of land is purchased by a Texas veteran he acquires equitable title to the land under the contract of sale and purchase, but the legal title remains in the State until the full purchase price has been paid, and if the veteran breaches the terms of his contract with the Board, by failure to make the installment payments or otherwise, the statute authorizes the Board to forfeit the contract whereupon full title to the land revests in the Board. The original veteran purchaser or his vendee, however, has the right to reinstate his purchase contract at any time prior to the date on which the Board shall have met and ordered such land to be advertised for resale or for lease for mineral development, but not thereafter, by paying all delinquent installments, penalties and costs incident to the reinstatement.

The effect of forfeiture of the veteran's purchase contract and repossession of the land by the Board is that the veteran has lost control of the land to the Board. Under paragraph 8(b) of the Conservation Reserve contract and under Section 485.169(b)(1) of the Conservation Reserve regulations, the loss of control, by sale or otherwise, by a producer signatory to the contract (i.e., the veteran) terminates the contract as to such producer. In such event the producer losing control is not entitled to further compensation under the contract and must refund all federal

Mr. Arthur B. Scharlach, page 4 (WW-457)

conservation practice cost-shares received by him under the contract unless the producer who acquires his interest in the farm or who acquires control of the farm (i.e., the Veterans Land Board) becomes a party to the contract and assumes all obligations thereunder. The memorandum from the Soil Bank General Counsel thus points out that the Board may recognize the contract and elect to continue under the terms of the contract, but only if it signs a contract to continue in effect its terms.

The foregoing regulations and memorandum had not been received by your office at the time of the transaction set forth in your letter and insofar as this tract is concerned the Veterans Land Board has not entered into any contract with the U.S. Department of Agriculture under its Soil Bank Program. It is understood that subsequent to the receipt of the above referred to memorandum, it has been the practice of the Board to enter into renewal Soil Bank contracts on those forfeited tracts which had previously been placed in the Soil Bank Conservation Reserve by the veteran purchaser, and the facts involved in the instant case are therefore not likely to recur. Since the Board was not a party to this contract and in fact has never entered into any Soil Bank contract on this particular tract and has assumed no conservation obligations thereunder, it is not entitled to the annual Soil Bank payment made under that contract. The party or parties designated in that contract are the ones entitled thereto. It is understood that this payment was made by the Commodity Credit Corporation to the original veteran purchaser and/or his assignee, and endorsed and forwarded to your office by those parties. Under present regulations there might be some question as to whether this Soil Bank contract had been terminated by the forfeiture and loss of control of the farm by the veteran, but reinstatement of the veteran's purchase contract has restored control to the veteran purchaser or his assignee, the Soil Bank Conservation practices were complied with during the interim so as to entitle the producer signatory to the contract to the annual payment specified, and such Conservation Reserve contract has now been continued in force and effect by the execution of a new Conservation Reserve contract by the present veteran purchaser which continues the original contract for the duration of the contract period. On the other hand, the Veterans Land Board has received all payments of delinquent principal and interest plus penalty interest, and is in the same position as if the forfeiture had never occurred.

Based on the specific facts presented, we therefore answer your first and second questions in the negative, and your third question by advising that the money should be returned to the party or parties from whom it was received.

In further answer to your inquiry, in those cases wherein the Board has, following a forfeiture, executed a new Soil Bank contract, we call your attention to the following portions of the memorandum from the Soil Bank General Counsel's office:

> "The matter of a division of payment where a contract changes hands in the middle of the year needs to be covered in our regulations. We are at present trying to resolve the answer to this question and it is anticipated that instructions will be issued in the near future.

> ". . . As indicated above, the board upon repossession of the land must execute a new contract to continue the original contract in effect. If the board, after entering such a new contract, resells the land to another veteran, it may retain any annual payment earned during the time it retained full title to the land, but the second veteran purchaser would have to elect whether to continue the contract in effect. Any default by the second veteran purchaser who continued the contract in effect would not affect the right of the board to retain annual payments earned during its holding title to the land. (Any conservation practice cost-share earned by the board during its tenure would have to be forfeited or refunded if the second veteran purchaser did not continue the contract in effect.)"

(We are here concerned only with annual payments and not with conservation practice cost-shares which might be subject to refund.)

Until such time as regulations are issued by the Secretary of Agriculture covering division of payment where a contract changes hands during the contract year, or the contract itself is revised to cover such situations, you are advised that annual Soil Bank payments which are paid to the Board under a Conservation Reserve contract which the Board has executed covering a forfeited tract are to be treated as income received from the land, and in accord with Section 8 of Article 5421m, shall be deposited to the credit of the Veterans Land Fund, less any reasonable and necessary expenses incurred by the Board in complying with the terms of the contract. If the veteran reinstates his purchase contract with the Board, then he must execute a Conservation Reserve contract if he desires to continue to participate in the program, and future payments would then be made in accord with such contract.

## SUMMARY

Proceeds payable under a Soil Bank Conservation Reserve contract are governed by the terms of the particular contract in force at the time, as supplemented by Regulations issued by the Secretary of Agriculture, and ordinarily those entitled to payments under such contracts are as specified therein.

Very truly yours,

WILL WILSON
Attorney General of Texas

By

Morgan Nesbitt
Assistant

MN:bh

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

Leonard Passmore

Wayland C. Rivers, Jr.

Henry G. Braswell

REVIEWED FOR THE ATTORNEY GENERAL
BY:
        W.V. Geppert